1  Esra A. Hudson (SBN 202881)
2  Stephanie A. Roeser (SBN 306343)
   Sarah E. Moses (SBN 291491)
3  Manatt, Phelps & Phillips LLP
   2049 Century Park East, Suite 1700
4  Los Angeles, California 90067
5  (310) 312-4000
   ehudson@manatt.com
6  sroeser@manatt.com
7  smoses@manatt.com

8  *Attorneys for Movant Blake Lively*

9
            UNITED STATES DISTRICT COURT
10          CENTRAL DISTRICT OF CALIFORNIA
11

12  BLAKE LIVELY,                    )    CASE NO.: 2:25-mc-00086
13              Movant,              )
                                     )    **[DISCOVERY MATTER]**
14  v.                               )
                                     )    **JOINT STIPULATION IN**
15                                   )    **SUPPORT OF BLAKE LIVELY'S**
16  SOURCED INTELLIGENCE,            )    **MOTION TO COMPEL**
    LLC,                             )    **COMPLIANCE WITH THIRD-**
17                                   )    **PARTY SUBPOENA PURSUANT**
               Respondent.          )    **TO FEDERAL RULE OF CIVIL**
18                                   )    **PROCEDURE 45**
19                                   )
                                     )    Date:      September 12, 2025
20                                   )    Time:      8:30 a.m.
21                                   )    Place:     First Street Courthouse
                                     )               350 West 1st Street
22                                   )    Courtroom: To be assigned
23                                   )
24  _____

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

I.    INTRODUCTION ........................................................................................1

    A.    Ms. Lively's Introductory Statement. ...........................................1

    B.    Sourced Intelligence's Introductory Statement. ............................4

II.    ARGUMENT...............................................................................................6

    A.    Ms. Lively's Position. ....................................................................6

        1.    This Court Should Transfer the Motion to the Issuing
            Court in the Southern District of New York..............................6

        2.    Alternatively, the Court Should Compel Sourced
            Intelligence to Fully Comply with the Subpoena. ....................8

        3.    Sourced Intelligence Should be Compelled to Produce a
            Privilege Log..........................................................................10

    B.    Sourced Intelligence's Position.....................................................11

        1.    Documents Responsive to the Subpoena are Protected
            from Disclosure by the Attorney-Client Privilege and/or
            Work Product Doctrine ...........................................................11

        2.    Sourced Intelligence Is Not Required to Prepare a
            Privilege Log For Documents Created After Lively Filed
            Her Complaint........................................................................15

        3.    The Court Should Not Transfer the Motion to The
            Southern District of New York ...............................................17

    C.    Requests for Production. ...............................................................18

        1.    Request Nos. 1-3, 7 - Documents and communications
            concerning topics directly related to the Lively Action...........19

            a.    Ms. Lively's Position.....................................................20

            b.    Sourced Intelligence's Position. ....................................20

        2.    Request No. 4 – Payments. .....................................................21

            a.    Ms. Lively's Position.....................................................21

            b.    Sourced Intelligence's Position. ....................................22

        3.    Request Nos. 5-6 – Services Provided.....................................22

            a.    Ms. Lively's Position.....................................................23

ii

|   | | b. | Sourced Intelligence's Position. | 24 |
| 4. | | Request No. 8 – Identities of personnel. | | 25 |
|   | a. | Ms. Lively's Position. | | 25 |
|   | b. | Sourced Intelligence's Position. | | 25 |
| 5. | | Request Nos. 9-10 – Agreements and related communications. | | 25 |
|   | a. | Ms. Lively's Position. | | 26 |
|   | b. | Sourced Intelligence's Position. | | 27 |

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*,
   881 F.2d 1486 (9th Cir. 1989)..................................................................12

*Am. Fed'n of Musicians of US & Canada v. 212 Prods. LLC*,
   2022 WL 2102888 (C.D. Cal. Jan. 10, 2022)........................................26

*Cal. Earthquake Auth. v. Metro. W. Sec., LLC*,
   285 F.R.D. 585 (E.D. Cal. 2012)....................................................... 11, 12

*Cher v. Bono*,
   2023 WL 9019046 (C.D. Cal. Dec. 26, 2023)........................... 9, 20, 24

*Chevron Corp. v. Donziger*,
   2013 WL 3294820 (S.D.N.Y. June 28, 2013) ........................... 12, 23

*Clarke v. Am. Commerce Nat'l Bank*,
   974 F.2d 127 (9th Cir. 1992) ......................................................22

*Colibri Heart Valve LLC v. Medtronic CoreValv*,
   2021 WL 6882375 (C.D. Cal. Dec. 6, 2021)............................... 5, 15

*Costabile v. Westchester*,
   254 F.R.D. 160 (S.D.N.Y. 2008)..........................................................12

*Davis v. Fendler*,
   650 F.2d 1154 (9th Cir. 1981) ..............................................................9

*Defrees v. Kirkland*,
   2016 WL 11744291 (C.D. Cal. Oct. 13, 2016) ........................... 20, 24

*E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*,
    2015 WL 12746706 (C.D. Cal. Oct. 23, 2015) ....................... 6, 7, 17

*Fed. Deposit Ins. Corp. v. Appleton*,
   2012 WL 12887400 (C.D. Cal. Aug. 27, 2012) ........................... 9, 16

*Helping Hand Caregivers Ltd. v. Darden Corp.*,
   2016 WL 10987313 (C.D. Cal. Feb. 17, 2016) ...................................7

*Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*,
   2009 WL 3857425 (S.D. Cal. Nov. 16, 2009).....................................26

*In re Aetna Inc. Litig.*,
   2020 WL 2770192 (C.D. Cal. Mar. 6, 2020) ....................................12

*In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*,
  357 F.3d 900 (9th Cir. 2004) ................................................................14

*In re Grand Jury Subpoena*,
  357 F.3d 900 (9th Cir. 2003) ................................................................12

*In re Grand Jury Witness*,
  695 F.2d 359 (9th Cir. 1982) ......................................................... 10, 16

*In re Osterhoudt*,
  722 F.2d 591 (9th Cir. 1983) ................................................................22

*In re Snap Inc. Sec. Litig.*,
  2018 WL 7501294 (C.D. Cal. Nov. 29, 2018) ......................... 5, 13, 16

*In re ZF-TRW MDL*,
  2024 WL 4184064 (C.D. Cal. Aug. 9, 2024) ........................................11

*Le v. Zuffa, LLC*,
  2017 WL 11632246 (C.D. Cal. Mar. 17, 2017) .....................................7

*Liner Freedman Taitelman + Cooley*,
  25-mc-00053 (MWC) (AJR) (July 7, 2025).................................. 7, 18

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
  2017 WL 10562991 (C.D. Cal. Sept. 18, 2017).....................................11

*O'Connor v. Boeing No. Amer., Inc.*,
  216 F.R.D. 640 (C.D. Cal. 2003)........................................... 12, 13, 14

*Physicians Healthsource, Inc. v. Masimo Corp., et al.*,
  2019 WL 8755114 (C.D. Cal. July 30, 2019) ......................................26

*Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*,
  2005 WL 1459555 (N.D. Cal. June 21, 2005) ......................................25

*Ralls v. United States*,
  52 F.3d 223 (9th Cir. 1995).................................................................26

*Rivera v. NIBCO, Inc.*,
  364 F.3d 1057 (9th Cir. 2004) ......................................................... 5, 21

*Roldan v. PSLA LLC*,
  2021 WL 4690587 (C.D. Cal. July 2, 2021) ..........................................2

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*,
  2009 WL 5114077 (N.D. Cal. Dec. 18, 2009) ................................ 5, 16

*Solis v. Best Miracle Corp.*,
  2011 WL 13187251 (C.D. Cal. Mar. 15, 2011) ...................................22

*Tatung Co., Ltd. v. Hsu*,
  2016 WL 695971 (C.D. Cal. Feb. 19, 2016) .......................................................24

*Underwriters at Lloyd's of London*,
  2021 WL 4978459 (C.D. Cal. Feb. 16, 2021) .......................................................7

*United States v. Aldman*,
  134 F.3d 1194 (2d Cir. 1998) ...................................................................9

*United States v. ChevronTexaco Corp.*,
  241 F. Supp. 2d 1065 (N.D. Cal. 2002)...................................................9

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2016) ....................................................................11

*United States v. Nobles*,
  422 U.S. 225 (1975) ...................................................................................11

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) .............................................................................. 9, 23

*Walker v. Asset Mktg. Sys. Ins. Servs. LLC*,
  2012 WL 827010 (S.D. Cal. Mar. 9, 2012)...........................................26

*Webb v. Trader Joe's Co.*,
  999 F.3d 1196 (9th Cir. 2021) ...................................................................5

*Zuehlsdorf v. FCA US LLC*,
  2020 WL 8575138 (C.D. Cal. Dec. 15, 2020)........................................26

**Statutes**

Fed. R. Civ. P. 26(b)(1).......................................................................................11

Fed. R. Civ. P. 26(b)(3)(A)(ii) .............................................. 9, 11, 13, 15

Fed. R. Civ. P. 26(b)(5)(A) ............................................................................10

Fed. R. Civ. P. 45(e)(2)(A) ........................................................................ 3, 10

Fed. R. Civ. P. 45(f) ..................................................................... 3, 6, 8, 17

Fed. R. Evid. 201 ...................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment .......................6

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

1

## I.    INTRODUCTION

### A.    Ms. Lively's Introductory Statement.

2

3    On December 31, 2024, Ms. Lively initiated litigation in the Southern District

4    of New York (the "Action") in connection with sexual harassment she and others

5    experienced while filming the movie "It Ends With Us" (the "Film") and subsequent

6    retaliation designed to "bury" her for speaking out. *See* Declaration of Sarah E.

7    Moses ("Moses Decl."), Ex. A ("Lively Complaint"). Ms. Lively brought her claims

8    against Wayfarer Studios LLC ("Wayfarer"), a production company that co-financed

9    and produced the Film and was the employer of all cast and crew on set, including

10    Ms. Lively (*id.* ¶ 57), as well as Justin Baldoni, the co-founder and co-chairman of

11    Wayfarer who co-starred in, directed, and served as a producer of the Film (*id.* ¶ 58);

12    Jamey Heath, the CEO and former President of Wayfarer (*id*. ¶ 59); and several other

13    Wayfarer Executives, affiliated entities, and public relations professionals (*id.* ¶¶

14    60–66) (together with all Defendants, the "Wayfarer Parties").

15    Ms. Lively alleges that she and other employees, cast, and crew of the Film

16    were the subject of unwelcome and inappropriate behavior by Mr. Baldoni and Mr.

17    Heath during production of the Film (*id.* ¶¶ 75–109), and that the Wayfarer Parties

18    retaliated against Ms. Lively for raising concerns about sexually harassing and other

19    inappropriate conduct on set by initiating a "social manipulation" campaign (the

20    "Retaliation Campaign" or the "Campaign") (*id.* ¶¶ 183–193). The Campaign was

21    intended to be, in the Wayfarer Parties' own words, "untraceable" (*id.* ¶ 29).

22    Since the Lively Action began, Ms. Lively has issued substantial discovery to

23    uncover the tracks of this "no fingerprints" campaign by identifying and obtaining

24    evidence from the Wayfarer Parties' network of agents who have participated, or are

25    currently participating, in the Campaign. One of these agents may be Sourced

26    Intelligence, LLC ("Sourced Intelligence"), a private intelligence and consulting

27    firm. Counsel for Sourced Intelligence, Liner Friedman Taitelman & Cooley LLP

28

("Liner")—which, notably, is the same law firm that represents all of the Wayfarer Parties—**_admits_** that Sourced Intelligence was in direct contact with Bryan Freedman, one of Liner's named partners and the lead attorney for the Wayfarer Parties (whose intimate involvement in the underlying dispute appears in the pleaded allegations), in January 2025, and ran "reports" for the Wayfarer Parties in connection with this litigation.[1] Moses Decl., Ex. F at 1. Sourced Intelligence's documents and communications are plainly relevant to the Action. Aside from concededly working with Liner for the benefit of the Wayfarer Parties (and now being represented by them), Sourced Intelligence publicly markets itself as an expert in "reputation management," with a specialty in "digital erasure," including wiping metadata and official documents from online repositories.[2] Sourced Intelligence also claims expertise in "scan[ning] all corners of the web, providing a tailored action plan to mitigate critical vulnerability and exposures discovered," and "scan[ning] the furthest reaches of the Internet including the deep + dark web allowing [clients] to stay one step ahead of [their] adversaries." _Id._ To date, Sourced Intelligence has not denied that it was retained to provide services to the Wayfarer Parties, or that it communicated directly with Liner about "reports" it ran for the Wayfarer Parties. Even so, Sourced Intelligence, through the Liner firm, has refused to provide any information about what kind of information is in its mysterious "reports."

On June 13, 2025, Ms. Lively served a third-party subpoena on Sourced Intelligence (the "Subpoena"). _See_ Moses Decl., Exs. B, C. On June 27, 2025,

---

[1] Ms. Lively is seeking documents and communications from Sourced Intelligence regarding the services it was retained to provide to the Wayfarer Parties, and such documents would include communications with the Liner firm as agents of the Wayfarer Parties. The Liner firm has its own interests to protect in connection with Sourced Intelligence's subpoena response, which may not be fully aligned with the interests of Sourced Intelligence, or even the Wayfarer Parties for that matter.

[2] _See Sourced Intelligence_, Solutions, https://sourcedintelligence.com/solutions/ (last visited Aug. 12, 2025). Ms. Lively requests that the Court take judicial notice of Sourced Intelligence's website pursuant to Fed. R. Evid. 201. _Roldan v. PSLA LLC_, 2021 WL 4690587, at *1 (C.D. Cal. July 2, 2021) (explaining that "courts can properly take judicial notice of websites" and taking judicial notice of defendant's website marketing page).

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

Sourced Intelligence served responses and objections to the Subpoena, in which it wholesale refused to produce any documents, citing broad-sweeping claims of attorney-client privilege and the work product doctrine. *See* Moses Decl., Ex. D; *see also* Ex. E. It also refused to produce a privilege log so that Ms. Lively can better understand the assertion of privilege, as is her right under Fed. R. Civ. P. 45(e)(2)(A). *See* Moses Decl., Ex. E at 5. Counsel for Ms. Lively conferred with Sourced Intelligence in a good-faith effort to resolve this dispute, but Sourced Intelligence has categorically refused to produce a single document or provide a privilege log, insisting that Ms. Lively accept its counsel's representations without any opportunity to investigate and confirm those representations. *See* Moses Decl., Ex. F. Ignoring prior rulings in the Action in which the Court in the Southern District of New York expressly noted that Ms. Lively alleges that the retaliation is "ongoing" and thus the discovery period should likewise be "ongoing," Liner asserts that all of Sourced Intelligence's documents were created after Ms. Lively initiated litigation in December 2024 and are thus irrelevant, privileged, and/or reflect attorney work product. *See id.* Sourced Intelligence is wrong, and has left the parties with no other option but to seek judicial intervention. *See id.*

As described herein, the Court should transfer the instant motion to compel (the "Motion") to the Southern District of New York, where the Action is currently pending. Fed. R. Civ. P. 45(f). Alternatively, given that the close of discovery is imminent and third party document productions are due August 15, the Court should grant the Motion and order Sourced Intelligence to produce documents within ten days of the order being issued. Additionally, Ms. Lively respectfully requests expedited consideration of this Motion in view of the deadlines in the Action, which include an August 22, 2025 deadline for motions to compel regarding third-party discovery, a September 30, 2025 deadline for the close of fact discovery, and a March 9, 2026 trial date. *See* Moses Decl., Ex. G.

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

1

**B.    Sourced Intelligence's Introductory Statement.**

2

3      Sourced Intelligence, LLC ("Sourced Intelligence") is a private investigative

4 firm engaged by counsel for defendants Wayfarer Studios LLC and Justin Baldoni

5 (collectively "Wayfarer") in *Lively v. Wayfarer Studios, LLC, et al.*, S.D.N.Y. Case

6 No. 24-cv-10049-LJL (the "Action") after Movant Blake Lively filed her complaint.

7      Lively essentially argues that she may utilize a third-party subpoena to invade

8 the attorney-client privilege and work product doctrine related to Sourced

9 Intelligence's post filing communications with counsel and its work product simply

10 because she has alleged "ongoing" retaliation. The protections afforded by the

11 attorney-client privilege and work product doctrine are not so easily pierced.

12      Sourced Intelligence performed investigative services for Wayfarer at the

13 direction of counsel and prepared reports based on the results of its investigation.

14 Declaration of Alexander Feil ("Feil Decl.") ¶¶ 5-6. It communicated solely with

15 Wayfarer's counsel and its personnel about the investigation. *Id.* ¶ 4.  It did not

16 perform any work related to a Digital Campaign as defined by the subpoena. *Id.* ¶ 8.

17 Nor did it perform services such as "social media monitoring", "influence

18 operations", "digital erasure", or "web monitoring" identified as relevant services

19 by Lively. *Id.* ¶ 7.

20      While Lively asserts that Sourced Intelligence "may be" a Wayfarer agent

21 participating in an ongoing "Retaliation Campaign", she fails to identify a single

22 piece of evidence that indicates Sourced Intelligence performed, or was asked to

23 perform, any such services for Wayfarer or its counsel. Nor could she, given that

24 Sourced Intelligence is not, and has never been, involved in any work that could be

25 construed as part of a Retaliation Campaign. Although Sourced Intelligence has told

26 this to Lively, she apparently does not believe the representations. However, the

27 attached declaration of Alexander Feil should end Lively's impermissible fishing

28 expedition seeking privileged information. *Webb v. Trader Joe's Co.*, 999 F.3d 1196,

1204 (9th Cir. 2021) ("We cannot 'condone the use of discovery to engage in 'fishing expedition[s]'" based solely on "gross speculation"); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s].'").

Nor can Lively establish a substantial need to obtain Sourced Intelligence's work product.  Lively points to Sourced Intelligence's webpage advertising services such as "digital erasure" and "web monitoring" to argue she needs access to work product relevant to her retaliation claim. Yet such services, which were not performed by Sourced Intelligence, have no application to Lively's retaliation claim. Therefore, she could not possibly show a substantial need for such documents. Feil Decl. ¶ 7.

Lively is also not entitled to a privilege log of documents withheld because all such documents were created after she filed her complaint. Feil Decl. ¶ 2. While Lively presses for more information[3] regarding exactly what work Sourced Intelligence did, it is not required to prepare a privilege log for documents created after litigation has been filed. *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 820CV00847DOCJDEX, 2021 WL 6882375, at *3 (C.D. Cal. Dec. 6, 2021) ("Courts in this circuit routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation."); *In re Snap Inc. Sec. Litig.*, No. CV1703679SVWAGRX, 2018 WL 7501294, at *1 (C.D. Cal. Nov. 29, 2018) ("[A] rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship."); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JWRS, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009)

---

[3] Lively's claim that Sourced Intelligence "has refused to provide any information about what kind of information is in its mysterious 'reports'" is puzzling and false.  Sourced Intelligence specifically informed Lively that it prepared and "provided several investigative background reports concerning certain individuals and companies" and that "the work performed by Source Intelligence relates to legal advice LFTC provided to its clients." Moses Decl., Ex. E at p. 2.

1  ("[C]ounsel's communications with the client and work product developed once the
2  litigation commences are presumptively privileged and need not be included on any
3  privilege log."). Nor has the Southern District ruled that all documents created after
4  the litigation was filed are relevant. Rather, the Court stated that responsive, non-
5  privileged documents from a current and former employee of a defendant were
6  relevant. The issue is moot here given the privileged nature of Sourced Intelligence's
7  documents.

8      Finally, Lively fails to establish exceptional circumstances justifying transfer
9  of her motion to the Southern District of New York. Sourced Intelligence is based
10  in California and should not be forced to litigate Lively's motion across the country.
11  The Federal Rules of Civil Procedure provide that in considering transfer, the
12  Court's "prime concern should be avoiding burdens on local nonparties subject to
13  subpoenas, and it should not be assumed that the issuing court is in a superior
14  position to resolve subpoena-related motions." Fed. R. Civ. P. 45 advisory
15  committee's note to 2013 amendment. This Court should therefore decide and deny
16  Lively's motion.

17  **II.    ARGUMENT**

18      **A.    Ms. Lively's Position.**

19          **1.    This Court Should Transfer the Motion to the Issuing Court
20              in the Southern District of New York**

21      This Court should transfer Ms. Lively's Motion to the Southern District of
22  New York because there are "exceptional circumstances" to do so. *See* Fed. R. Civ.
23  P. 45; *see also E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, 2015 WL 12746706, at
24  *2 (C.D. Cal. Oct. 23, 2015). Under the Advisory Committee notes, "transfer may
25  be warranted in order to avoid disrupting the issuing court's management of the
26  underlying litigation …." Fed. R. Civ. P. 45(f). "Courts have also considered a
27  number of factors relating to the underlying litigation including the 'the complexity,

28

procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *E4 Strategic Sols.,* 2015 WL 12746706, at *3 (citation omitted).

These factors are present here and support transferring this Motion, as another court in this District recently concluded as to a separate third-party subpoena issued in the Action. *See Liner Freedman Taitelman + Cooley*, 25-mc-00053 (MWC) (AJR) (July 7, 2025), ECF No. 20 (transferring subpoena to the Southern District of New York pursuant to Fed. R. Civ. P. 45(f)). Judge Liman in the Southern District of New York has been presiding over the Action since it began, is familiar with the full scope of issues involved, and has resolved several discovery motions including with respect to subpoenas issued to third parties on similar issues. *See, e.g.*, ECF Nos. 200, 321, 338, 472, 473, 474, 483, 585, 586. Thus, efficient management of the underlying litigation and judicial economy strongly counsel in favor of transfer. *See Helping Hand Caregivers Ltd. v. Darden Corp.*, 2016 WL 10987313, at *2-3 (C.D. Cal. Feb. 17, 2016) (transferring subpoena-related motion because the motion would "be better decided by the court with control over the disposition of the underlying case" and the transferee court was "familiar with some [of] the topics listed in the subpoenas," meriting a finding of "exceptional circumstances"); *Le v. Zuffa, LLC*, 2017 WL 11632246, at *3-4 (C.D. Cal. Mar. 17, 2017) (transferring motion to quash because of the transferee court's "far superior familiarity with the underlying issues" and where the motion to quash "depend[ed] heavily on determinations of whether the requested documents are relevant to the underlying case."); *Underwriters at Lloyd's of London*, 2021 WL 4978459, at *2 (C.D. Cal. Feb. 16, 2021) (transfer appropriate where issuing court "has already considered issues critical to the motion to quash"). Judge Liman's familiarity with the issues underlying the Subpoena is particularly critical here to allow for swift resolution of this Motion in accordance with the case's expedited timeline, which includes an August 22, 2025 deadline for

motions to compel regarding third-party subpoenas and a September 30, 2025 deadline for the completion of fact discovery. *See* Moses Decl., Ex. G.

For these reasons, exceptional circumstances warrant transferring this Motion to the Southern District of New York. *See* Fed. R. Civ. P. 45(f).

### 2.    Alternatively, the Court Should Compel Sourced Intelligence to Fully Comply with the Subpoena.

Sourced Intelligence does not contest that Ms. Lively validly served the Subpoena, which lists a place of compliance located within this Court's jurisdiction. The Subpoena seeks information that is plainly relevant to the Action, including: (1) documents and communications concerning Ms. Lively, the Film, the alleged Retaliation Campaign, and the Wayfarer Defendants; (2) information regarding services Sourced Intelligence provided to the Wayfarer Defendants; (3) payments made to Sourced Intelligence for those services; and (4) related agreements and communications describing the scope of services. *See* Moses Decl., Ex. C. As alleged in detail in the Lively Complaint, the Wayfarer Parties and others orchestrated a coordinated digital smear campaign against Ms. Lively after she raised concerns about misconduct. The Lively Complaint alleges that the campaign is ongoing—a fact recognized by the Southern District of New York in its order compelling other third-parties to produce relevant, post-December 2024 documents.[4] The Wayfarer Defendants admit that they had retained Sourced Intelligence by at least December 2024, and evidence produced during discovery suggests that the Wayfarer Defendants' alleged Campaign has included many of the very tactics that Sourced Intelligence advertises—including, for example, "reputation management," "digital erasure," "tailored" "mitigation plans" to "allowing [clients] to stay one step ahead of [their] adversar[ies]." *See supra* at p. 5.

---

[4] Indeed, in that order, the court explained that documents created post-December 2024 are relevant to the Lively Complaint. *See* Moses Decl., Ex. H at 24:7-25:3.

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

1   These facts underscore why the categories of documents and communications sought
2   from Sourced Intelligence are highly relevant to proving the existence, scope, and
3   mechanics of the Retaliation Campaign, and why the relevant time period extends
4   through the present date.

5       Sourced Intelligence's blanket invocation of the attorney–client privilege and
6   work product doctrine to justify withholding **all** responsive materials is without
7   merit. First, courts have long held that a wholesale assertion of privilege—without
8   identifying specific documents and providing the information necessary to assess the
9   claim—is improper. *See Fed. Deposit Ins. Corp. v. Appleton*, 2012 WL 12887400,
10  at *3 (C.D. Cal. Aug. 27, 2012) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th
11  Cir. 1981)). Second, the mere fact that Sourced Intelligence was retained by counsel
12  for the Wayfarer Defendants does not, as a matter of law, shield every responsive
13  document from disclosure, including (and especially) communications with other
14  third-parties. *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)
15  ("[T]he protection of the privilege extends only to *communications* and not to facts."
16  (emphasis in original)); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d
17  1065, 1076 (N.D. Cal. 2002). Third, the work product doctrine protects only those
18  documents "prepared in anticipation of litigation or for trial," and even then, it may
19  be overcome by a showing of substantial need and undue hardship in obtaining the
20  equivalent elsewhere. Fed. R. Civ. P. 26(b)(3)(A)(ii); *Cher v. Bono*, 2023 WL
21  9019046, at *3-4 (C.D. Cal. Dec. 26, 2023); *United States v. Aldman*, 134 F.3d 1194,
22  1197–98 (2d Cir. 1998).

23      Ms. Lively easily meets that standard here: the subpoenaed materials are
24  uniquely within Sourced Intelligence's possession, custody, or control—or where in
25  the possession of the Wayfarer Parties or their counsel, have not been produced
26  (Moses Decl., ¶ 11)—and obtaining them is essential to proving the existence, scope,
27  and mechanics of the Retaliation Campaign alleged in the Lively Complaint. As for
28

a burden, during the meet and confer process, counsel for Sourced Intelligence downplayed its services, stating that it only produced "reports" in January 2025, in which case there should be a limited document universe. Critically, without these documents, Ms. Lively will be unable to fully uncover who participated in the Campaign, what tactics were deployed, and how the Wayfarer Defendants directed and financed those efforts. Accordingly, the Court should order Sourced Intelligence to fully comply with the Subpoena and produce the documents and communications set forth below.

### 3. Sourced Intelligence Should be Compelled to Produce a Privilege Log.

Notwithstanding the foregoing, none of Sourced Intelligence's objections—whether framed around relevance, privilege, or work product—provide a valid basis for withholding responsive documents in their entirety. Even where Sourced Intelligence invokes attorney–client privilege or work product protection, those assertions are procedurally deficient under both Federal Rule 45(e)(2)(A) and Rule 26(b)(5)(A). Rule 26(b)(5)(A) mandates that the withholding party "expressly make the claim" and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Courts uniformly reject blanket privilege assertions like those invoked by Source Intelligence here. *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) ("blanket assertions of privilege" are "extremely disfavored").

Sourced Intelligence contends it has provided "sufficient information," but its descriptions remain vague and uninformative, and none of its representations have been made under oath, thus depriving both Ms. Lively and the Court of the ability to evaluate whether the privilege or protection actually applies. Because a proper log (or equivalent disclosure) is a prerequisite to withholding responsive materials on privilege grounds, Sourced Intelligence's failure to comply warrants an order

compelling full production of all non-privileged documents and a compliant privilege log.

**B.      Sourced Intelligence's Position.**

**1.      Documents Responsive to the Subpoena are Protected from Disclosure by the Attorney-Client Privilege and/or Work Product Doctrine**

A party's right to discovery is limited to relevant, non-privileged information. Fed. R. Civ. P. 26(b)(1). As described below, the subpoena calls for documents protected by the attorney-client privilege and/or work product doctrine. As noted, Sourced Intelligence is a private investigation firm, which performed investigations at the direction of counsel after Lively had filed her complaint. All communications related to its engagement were solely with counsel's personnel. "Communications pertaining to legal advice between a lawyer and a private investigator retained by that lawyer to assist in the lawyer's representation of a potential client or client are covered by the attorney-client privilege." *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2017 WL 10562991, at *4 (C.D. Cal. Sept. 18, 2017) (*citing United States v. Christensen*, 828 F.3d 763, 802-03 (9th Cir. 2016)); *Cal. Earthquake Auth. v. Metro. W. Sec., LLC*, 285 F.R.D. 585, 595 (E.D. Cal. 2012) ("[T]he privilege also protects communications involving agents of the attorney, the client, or both in furtherance of the attorney-client relationship."). Privileged information and materials are "absolutely protected from disclosure" without any balancing or weighing of factors. *In re ZF-TRW MDL*, 2024 WL 4184064, at *1 (C.D. Cal. Aug. 9, 2024).

Moreover, Federal Rule of Civil Procedure 26(b)(3) provides work product protection for material prepared by a party's representative which includes their attorney, investigator, or agent. Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of

litigation or for trial by or for another party of its representatives (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent); *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (the attorney work product "doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *O'Connor v. Boeing No. Amer., Inc.*, 216 F.R.D. 640, 643-44 (C.D. Cal. 2003) (notes prepared by attorney's investigator are protected under work product doctrine).[5]

Requiring production of the investigative reports and communications regarding them with counsel would defeat the underlying purpose of the work product doctrine, which is "to discourage counsel for one side from taking advantage of the trial preparation undertaken by opposing counsel, and to encourage both sides to conduct thorough and independent investigations." *Newport Pac., Inc. v. County of San Diego*, 200 F.R.D. 628, 632 (S.D. Cal. 2001) (citation omitted). The protections afforded by the work produce doctrine are meant to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989).

---

[5] *See also In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2003) (work product doctrine applies to documents obtained by investigators working for attorneys); *California Earthquake Auth. v. Metro. W. Sec., LLC*, 285 F.R.D. 585, 589 (E.D. Cal. 2012) ("The work product doctrine applies to investigators or agents working for attorneys provided that the documents were created in anticipation of litigation, provided the documents were created in anticipation of litigation"); *In re Aetna Inc. Litig.*, 2020 WL 2770192, at *1 (C.D. Cal. Mar. 6, 2020) (holding the "conduct and communications of non-attorney employees, agents and investigators undertaken at direction of counsel are work-product protected"); *Costabile v. Westchester*, New York, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (private investigator's report prepared on behalf of employee's former counsel in anticipation of litigation as subject to work product protection); *Chevron Corp. v. Donziger*, 2013 WL 3294820, at *1 (S.D.N.Y. June 28, 2013) (work product doctrine "extends to work prepared by a private investigator in anticipation of litigation, at least where the investigator is working at the direction of an attorney.").

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

There are two kinds of work product – opinion work product and ordinary work product. Counsel's mental impressions, conclusions or legal theories represent opinion work product which enjoys almost absolute immunity and can be discovered "only in rare and extraordinary circumstances.". *O'Connor v. Boeing North American, Inc.*, 216 F.R.D. 640, 642-43 (C.D. Cal. 2003). Even ordinary work product is only discoverable if it is (1) otherwise discoverable under Rule 26(b)(1); and (2) the party seeking the discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). A party resisting disclosure on the basis of work product "bear[s] the burden of establishing that documents (1) were prepared in anticipation of litigation or for trial and (2) were prepared by or for another party or by or for that other party's representative." *In re Snap Inc. Sec. Litig.*, No. CV1703679SVWAGRX, 2018 WL 7501294, at *3 (C.D. Cal. Nov. 29, 2018).

Sourced Intelligence provides various services utilizing its "targeted intelligence and investigative expertise".[6] With respect to the Action, Sourced Intelligence was engaged by counsel for Wayfarer in late December 2024, after Lively had filed her Complaint in the Action. Feil Decl. ¶ 2. Sourced Intelligence's services were limited to background investigation of certain individuals and companies with potential knowledge of Lively's allegations, and preparation of reports based on the investigations. *Id.* ¶¶ 5-6. Sourced Intelligence was not asked to perform, and did not perform, any services beyond investigation as described above. *Id.* ¶¶ 7-8. All communications responsive to the subpoena were made only with counsel for Wayfarer. *Id.* ¶ 4.

Sourced Intelligence has demonstrated that documents it created at the direction of counsel after she filed the complaint were prepared in anticipation of

---

[6] See https://sourcedintelligence.com/about-us/

litigation. It has also shown that the documents were prepared for Wayfarer or their representative. Thus, Sourced Intelligence has met its burden to show any responsive documents are protected from disclosure by the attorney-client privilege and/or work product doctrine. Indeed, this circuit has held that "single purpose" investigative reports prepared in anticipation of litigation "clearly pass" the test for work produce protection. *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). Therefore, the documents are privileged and need not be produced.

Lively argues that she can still reach work-product documents if she demonstrates a substantial need for the documents and undue hardship in obtaining the documents elsewhere. Lively has not come close to meeting this standard. First, Lively may not reach documents containing opinion work product, which includes documents referencing which persons or companies Sourced Intelligence was directed by counsel to investigate. *O'Connor*, 216 F.R.D. at 642.

Second, Lively claims that documents related to services advertised by Sourced Intelligence are "essential to proving the existence, scope, and mechanics of the Retaliation Campaign alleged in the Lively Complaint." Sourced Intelligence has already demonstrated that it did not perform the services identified by Lively, such as "social media monitoring", "influence operations", "digital erasure", or "web monitoring." Feil Decl. ¶ 7. Moreover, Lively fails to explain how documents related to any of those services could even possibly be relevant, let alone essential, to the alleged Retaliation Campaign. Sourced Intelligence's "digital erasure" services are aimed at removing a client's personal identifying information such as home address, phone number, or identification of relatives from the internet.[7]

---

[7] Lively cherry picks buzzwords from Sourced Intelligence's website in an effort to imply a sinister intent behind its services. Its digital erasure services are actually described on its website as follows: "Digital Erase: Sourced Intelligence identifies, isolates, and deletes your data from hundreds of websites and online repositories. We believe this is the single largest threat to our clients. Information deleted from the

Similarly, Sourced Intelligence's web monitoring services assist a client in monitoring their own digital presence on the internet.[8] These services are not connected to placing any content on the internet. Therefore, Lively has not established a substantial need for any work product documents, whether actual or hypothetical based on her own speculation.

Lastly, Lively misstates the burden requirement, arguing that due to the limited universe of the documents, there would not be a large burden placed on Sourced Intelligence to produce the documents. However, the showing of burden required by Federal Rule of Civil Procedure 26(b)(3)(A)(ii) lies with the party seeking the documents to obtain them elsewhere – not the burden for the subpoenaed party to produce them. Fed. R. Civ. P. 26(b)(3)(A)(ii). Lively cannot invade the attorney-client privilege or work product protection simply by claiming she does not believe production would be burdensome on Sourced Intelligence.

### 2. Sourced Intelligence Is Not Required to Prepare a Privilege Log For Documents Created After Lively Filed Her Complaint

Lively argues that Sourced Intelligence should be required to prepare a privilege log. However, Lively's argument does not comport with federal law.

As previously explained to Lively's counsel, all communications and work product by Sourced Intelligence related to the movie It Ends With Us, or the Action, post-dates the filing of Lively's Complaint. *See* Moses Decl., Ex. E at p. 5 ("In any event all the documents responsive to the subpoena are dated post commencement of the litigation."); Ex. F at p. 4 ("… Sourced Intelligence need not prepare a privilege log for communications or documents prepared after the commencement

---

internet includes but is not limited to physical addresses, phone numbers, relatives, associates, emails, passwords, metadata, and official documents." *See* https://sourcedintelligence.com/solutions/

[8] Sourced Intelligence's website identifies its "Digital Overwatch" services as follows: "The Sourced 24/7 digital surveillance service scans the furthest reaches of the Internet including the deep + dark web allowing you to stay one step ahead of your adversary. Keep tabs on what is said about you or your organization at all times." *See* https://sourcedintelligence.com/solutions/

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

of litigation."); *see also* Feil Decl., ¶ 2. Lively's contention that responsive documents created after the litigation has commenced should be identified on a privilege log is not consistent with Ninth Circuit law. *Colibri*, 2021 WL 6882375, at *3 ("Courts in this circuit routinely deny a motion to compel a privilege log of attorney-client communications or work product dated after commencement of litigation."); *In re Snap Inc. Sec. Litig.*, 2018 WL 7501294, at *1 ("[A] rule requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship."); *Ryan Inv. Corp.*, 2009 WL 5114077, at *3 ("[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log.").

Lively cites to case law stating that blanket assertions of privilege are disfavored. However, the authority cited by Lively, *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982)[9] involved a subpoena to attorneys of the targets of a grand jury investigation where the attorneys claimed privilege but did not provide any evidence of how fees paid to them related to any legal advice sought by their clients. Even then, the Court held that the type of information sought by the subpoenas - attorney time records describing the services performed by the attorneys, retainer agreements, contracts, letters of agreement, and related correspondence – was "an unjustified intrusion into the attorney-client relationship." *Id.* at 362. Here, the correspondence with Lively's counsel characterizes exactly what kind of documents exist and the attached declaration of Alexander Feil provides further evidence that they constitute work product and privileged

---

[9] Lively also cites to *Fed. Deposit Ins. Corp. v. Appleton*, No. CV 11-476-JAK (PLAX), 2012 WL 12887400 (C.D. Cal. Aug. 27, 2012) arguing that Sourced Intelligence must provide a privilege log. However, *Appleton* involved documents created prior to the litigation and the party asserting privilege did not provide any evidence that a privilege even applied. Sourced Intelligence has shown that its communications and documents were prepared in anticipation of litigation and sent to a party's representative. *See* Feil Decl.

communications. Thus, "blanket" assertions of privilege are not an issue for the work product created after commencement of the litigation.

### 3. The Court Should Not Transfer the Motion to The Southern District of New York

Lively argues that this Court should decline to decide the Motion to Compel, claiming that exceptional circumstances necessitate its transfer to the Southern District of New York. Rule 45 of the Federal Rules of Civil Procedure permits the transfer of subpoena-related motions from the court where compliance is due only where (1) the person subject to the subpoena consents; or (2) the court finds exceptional circumstances. *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, No. SAMC1500022DOCDFMX, 2015 WL 12746706, at *2 (C.D. Cal. Oct. 23, 2015); Fed. R. Civ. P. 45(f).

Sourced Intelligence does not consent to transfer of this motion to the Southern District of New York. As for exceptional circumstances, "the proponent of transfer bears the burden of showing that such circumstances are present." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. The Advisory Notes provide: "The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id*. "[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* "Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.*

Lively can point to no risk of inconsistent outcomes, or any likelihood of the same issues arising in discovery in many districts, as contemplated by the Advisory Committee Notes. While Lively claims the Southern District has already ruled on

"motions including with respect to subpoenas issued to third parties on similar issues," none of the motions referenced by Lively involved an out of state third-party whose sole role was providing investigative services to counsel for Wayfarer after litigation had already been commenced.[10] This is not a case in which the interests weighing in favor of transfer so clearly outweigh the interests of Sourced Intelligence in having a local court determine its rights. On the contrary, the issues at stake in this Motion—whether the documents are protected by the attorney privilege and/or work product doctrine and whether a privilege log must be prepared —are straightforward. The Court can and should decide this Motion.

### C.   Requests for Production.

Pursuant to Local Civil Rule 37-2.1, the disputed discovery requests are set forth below, followed by the parties' respective positions as to each request. Sourced Intelligence asserted the following identical response to each of Ms. Lively's document requests:

> Sourced Intelligence objects to this Request on the grounds that it (1) seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, (2) is overbroad as there is no limitation on the time period requested, the subject matter is not sufficiently particularized, and the Request is overbroad as to the definitions of "You" and "Digital Campaign"; (3) seeks information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine; (4) is unduly burdensome and not proportional to the needs of the case.

---

[10] Lively points to a Court Order transferring a Motion to Quash from the Central District of California to the Southern District of New York related to this Action. However, in that miscellaneous action, the moving party was counsel for the Wayfarer Parties in the Action, Liner Freedman Taitelman + Cooley, LLP ("LFTC"). The Court held that LFTC would not suffer any burden by transfer because it was already counsel of record in the Action and it advertised that it maintains an office in New York. *See Liner Freedman Taitelman + Cooley*, 25-mc-00053 (MWC) (AJR) (July 7, 2025), ECF No. 20. Those factors are not present for Sourced Intelligence, who, although represented by LFTC, does not maintain an office in New York and has an interest in having its local court decide the motion.

Moses Decl., Ex. D.

To avoid unnecessary duplication, this identical response is reproduced here once and incorporated by reference into each section below in lieu of restating it in full after each request.

1.   **Request Nos. 1-3, 7 - Documents and communications concerning topics directly related to the Lively Action.**

**REQUEST FOR PRODUCTION NO 1:**

All Documents and Communications with any Wayfarer Defendant, their counsel, or anyone on their behalf concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, any Wayfarer Defendant, or the Consolidated Action.

**REQUEST FOR PRODUCTION NO 2:**

All Documents and Communications concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, any Wayfarer Defendant, or the Consolidated Action.

**REQUEST FOR PRODUCTION NO 3:**

All Documents and Communications with or concerning any current or former TAG employee concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, any Wayfarer Defendant, or the Consolidated Action.

**REQUEST FOR PRODUCTION NO 7:**

Documents sufficient to show who You communicated with, including via ephemeral messaging, concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Wayfarer Defendants, the Film, the Digital Campaign, or the Consolidated Action.

### a.    Ms. Lively's Position.

Requests Nos. 1-3 and 7 seek documents and communications concerning discrete topics related to the Lively Action and are directly relevant to establishing whether Sourced Intelligence was engaged in, or contributed to, the alleged Retaliation Campaign; what specific activities it undertook; and whether those activities match the conduct alleged in the Lively Complaint. Documents and communications responsive to these requests will reveal what services were requested, how they were executed, and the nature of Sourced Intelligence's role in relation to the Wayfarer Defendants — all of which bear on liability and damages.

The fact that Sourced Intelligence was retained through the Wayfarer Defendants' counsel does not transform every responsive communication into privileged material. To the extent these communications involve third parties, they are outside the scope of the attorney–client privilege. *See Cher*, 2023 WL 9019046, at \*4; *Defrees v. Kirkland*, 2016 WL 11744291, at \*6-7 (C.D. Cal. Oct. 13, 2016). Likewise, even if some documents were created in anticipation of litigation, Ms. Lively has a substantial need for them because many of these materials are uniquely within Sourced Intelligence's possession and cannot be obtained elsewhere. (*See* Moses Decl., ¶ 11.) Without knowing which third parties were involved or the specifics of the work performed, Ms. Lively cannot subpoena alternative sources. Courts have consistently recognized that the work product doctrine cannot be used to shield such non-opinion, fact-based materials that are essential to a party's proof. *See Cher*, 2023 WL 9019046, at \*3 (citation omitted).

### b.    Sourced Intelligence's Position.

As described above, the documents sought by Lively are protected from disclosure by the attorney-client privilege and attorney work product doctrine. All communications responsive to these requests were only with counsel for Wayfarer and did not include third parties. Feil Decl., ¶ 4. All other responsive documents

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45

were prepared specifically for the Action at the direction of counsel for Wayfarer and transmitted only to them. *Id.* ¶¶ 4, 9.

Even if the responsive documents were not protected from disclosure, Lively fails to establish how services such as erasure of personal information or monitoring of the internet are relevant to Lively's retaliation claim. Lively's brief admits she is engaging in a fishing expedition without any basis other than speculation, stating that it needs the documents to discover "whether [Sourced Intelligence's] activities match the conduct alleged in the Lively Complaint." "District courts need not condone the use of discovery to engage in 'fishing expedition[s].'" *Rivera*, 364 F.3d 1057 at 1072. One would hope Lively's lawsuit had a basis in fact prior to making allegations and then conducting discovery in the hope that documents she receives in discovery would "match" the allegations. Apparently Lively now seeks to invade the attorney-client privilege and work product doctrine in the hope of finding evidence to "match" her allegations.

### 2.   Request No. 4 – Payments.

### REQUEST FOR PRODUCTION NO 4:

All Documents and Communications concerning Payments that You have made, received or promised that relate to Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, any Wayfarer Defendant, or the Consolidated Action.

### a.   Ms. Lively's Position.

Payments made to Sourced Intelligence by or on behalf of the Wayfarer Defendants are directly relevant to identifying the nature and scope of the engagement. Payment records — including invoices, receipts, wire confirmations, and other transactional records — are not privileged because they do not disclose legal advice or attorney mental impressions and, even if they did, could be redacted to address any alleged privilege or work product concerns. *See Clarke v. Am.*

*Commerce Nat'l Bank*, 974 F.2d 127, 130 (9th Cir. 1992) (finding that billing statements containing the client's identity, the case name, the fee amount, and the general nature of the services performed were not protected by the attorney-client privilege); *In re Osterhoudt*, 722 F.2d 591, 594 (9th Cir. 1983) (holding that revealing the amounts and dates of payments to attorney would not disclose confidential communications, and therefore the information was not protected by the attorney-client privilege); *Solis v. Best Miracle Corp.*, 2011 WL 13187251, at *1–2 (C.D. Cal. Mar. 15, 2011) ("dates, amounts, and source of payments received by a law firm from a client" are not protected by the attorney-client privilege).

### b.    Sourced Intelligence's Position.

Sourced Intelligence's billing invoices reference the work performed for counsel for Wayfarer and thus constitute protected work product. Lively's authority, *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 130 (9th Cir. 1992), is distinguishable as the Court there specifically found that billing statements were not privileged because they did not "reveal[] specific research or litigation strategy which would be entitled to protection from disclosure.") *Id.* Thus, the Court recognized that invoices may be entitled to protection from disclosure when they contain such information. Here, the invoices describe the subjects of the investigative reports performed by Sourced Intelligence, thus constituting work product and revealing the thoughts, impressions, and directions of counsel for the Wayfarer Parties.

Moreover, Lively fails to explain how invoices related to Sourced Intelligence's services could have any relevance to her claims or lead to the discovery of any admissible evidence. Whether Sourced Intelligence charged a small or large amount for its services does not provide any relevant information.

### 3.    Request Nos. 5-6 – Services Provided.

### REQUEST FOR PRODUCTION NO 5:

All Documents and Communications concerning any work, services, activities, methods, strategy, approach,

technology, tools, capabilities, or similar used, or contemplated, by You or your agents, contractors, or employees related to Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, any Wayfarer Defendant, or the Consolidated Action.

**REQUEST FOR PRODUCTION NO 6:**

All Documents and Communications between You and any Wayfarer Defendant or their counsel concerning efforts to seed, influence, encourage, create, purchase, manipulate, boost, amplify, facilitate or engage with Social Media related to Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, or the Consolidated Action.

### a.    Ms. Lively's Position.

Requests Nos. 5 and 6 seek documents sufficient to identify the services Sourced Intelligence provided to the Wayfarer Defendants. While Sourced Intelligence asserts it merely prepared "background reports," Ms. Lively is not required to accept that characterization at face value. Given Sourced Intelligence's own marketing materials, which promote capabilities in digital intelligence gathering, social media monitoring, and influence operations, there is good reason to believe the work may have included activities consistent with those alleged in the Lively Complaint. Documents showing the services rendered are therefore essential to resolving the factual dispute underlying the ongoing Retaliation Campaign.

Because these materials pertain to the factual scope of Sourced Intelligence's work, they are not shielded by the attorney–client privilege. *See Upjohn*, 449 U.S. at 395; *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1069. As to work product, Sourced Intelligence has not made the specific factual showing required to justify withholding all responsive documents as opinion work product. Conclusory assertions that withheld materials are "opinion work product" are insufficient; Sourced Intelligence must identify the nature of the documents and the specific legal

opinions allegedly revealed. *Tatung Co., Ltd. v. Hsu*, 2016 WL 695971, at *7 (C.D. Cal. Feb. 19, 2016). Finally, where the services involved communications with third parties — such as social media platforms, vendors, or contractors — those communications are not protected at all. *See Cher*, 2023 WL 9019046, at *2-3; *Defrees*, 2016 WL 11744291, at *7-8.

### b.    Sourced Intelligence's Position.

First, Sourced Intelligence has already informed Lively that no responsive documents to Request No. 6 exist, because Sourced Intelligence was not involved in any alleged effort "to seed, influence, encourage, create, purchase, manipulate, boost, amplify, facilitate or engage with Social Media related to Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, or the Consolidated Action." *See* Moses Decl., Ex. E at p. 3 ("[T]here are no documents responsive to Requests, 6, 9, and 10").

Lively again asserts that Sourced Intelligence's marketing material promote its "capabilities in digital intelligence gathering, social media monitoring, and influence operations" which provides "good reason to believe the work may have included activities consistent with those alleged in the Lively Complaint." First, Lively's request represents an impermissible fishing expedition without any basis in fact. Second, Lively does not identify the specific marketing materials it claims promote "digital intelligence gathering, social media monitoring, and influence operations". Indeed, the webpage Lively cites as Sourced Intelligence's "marketing webpage", https://sourcedintelligence.com/solutions, makes no mention of the words "social media" or "influence". Lively appears to have conjured these buzzwords for purposes of her motion. Third, even if Sourced Intelligence did promote such capabilities, Lively fails to explain how intelligence gathering or social media monitoring relate to her retaliation claim. She fails to point to any specific allegation that relates to such services. Finally, for the reasons stated above, any

responsive documents would be protected from disclosure by the attorney-client privilege or attorney work product doctrine.

### 4.    Request No. 8 – Identities of personnel.

**REQUEST FOR PRODUCTION NO 8:**

> All Documents and Communications sufficient to show all Persons who performed any work, services, or activities concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, or the Consolidated Action.

#### a.    Ms. Lively's Position.

The identities of individuals who performed work for the Wayfarer Defendants through Sourced Intelligence are not privileged and fall squarely within Rule 26(b)(1)'s relevance standard. Identifying these individuals will enable Ms. Lively to tailor expert discovery as well as lines of questioning during upcoming depositions. Courts have repeatedly held that the identity of a person performing work is not protected from disclosure. *See Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555, at *5 (N.D. Cal. June 21, 2005).

#### b.    Sourced Intelligence's Position.

Lively fails to explain how the identity of any Sourced Intelligence employee could be relevant to her claims other than it will allow her to "tailor" expert discovery or questions during depositions. Lively fails to explain how such information could possibly inform expert discovery and thus the request is not relevant.

### 5.    Request Nos. 9-10 – Agreements and related communications.

**REQUEST FOR PRODUCTION NO 9:**

> All draft and final Agreements, including contracts, retainer Agreements, engagement letters, and promises otherwise memorialized, effective at any point from July 1, 2024 through present, between or involving You and any Wayfarer Defendant or their counsel, concerning Ms.

Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, any Wayfarer Defendant, or the Consolidated Action.

**REQUEST FOR PRODUCTION NO 10:**

All draft and final Agreements, between or involving You and any Wayfarer Defendant or their counsel, including contracts, retainer Agreements, engagement letters, and promises otherwise memorialized, concerning Ms. Lively, Mr. Reynolds, the Lively/Reynolds Companies, the Film, the Digital Campaign, the Consolidated Action, or any Wayfarer Defendant.

### a.      Ms. Lively's Position.

Agreements between Sourced Intelligence and the Wayfarer Defendants (or their counsel) are central to understanding the scope of the engagement. Retainer agreements and communications memorializing the scope of an engagement are not privileged. *See Zuehlsdorf v. FCA US LLC*, 2020 WL 8575138, at *3 (C.D. Cal. Dec. 15, 2020) (quoting *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, 2009 WL 3857425, at *1–2 (S.D. Cal. Nov. 16, 2009)) ("The Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine"); *Physicians Healthsource, Inc. v. Masimo Corp., et al.*, 2019 WL 8755114, at *2 (C.D. Cal. July 30, 2019) (citing *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995) (compelling compliance with RFPs seeking retainer and fee agreements because they are "not protected by the attorney-client privilege or work product doctrine"). And if no such documents exist, as Sourced Intelligence appears to suggest, they should have no problem saying so in a verified discovery response. *See Am. Fed'n of Musicians of US & Canada v. 212 Prods. LLC*, 2022 WL 2102888, at *9 (C.D. Cal. Jan. 10, 2022); *Walker v. Asset Mktg. Sys. Ins. Servs. LLC*, 2012 WL 827010, at *3 (S.D. Cal. Mar. 9, 2012).

### b.    Sourced Intelligence's Position.

Sourced Intelligence has already informed Lively that no responsive documents to Request Nos. 9 and 10 exist. *See* Moses Decl., Ex. E at p. 3 ("[T]here are no documents responsive to Requests, 6, 9, and 10"). Sourced Intelligence is a third-party and need not provide verified discovery responses as Lively demands. Nevertheless, the attached declaration indicates that no engagement agreement with respect to this dispute exists. *See* Feil Decl. ¶ 2.

Respectfully submitted,

Dated: August 22, 2025

MANATT, PHELPS & PHILLIPS, LLP

/s/ Esra A. Hudson
Esra A. Hudson
Stephanie A. Roeser
Sarah E. Moses
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com
smoses@manatt.com

*Attorneys for Movant Blake Lively*

Dated: August 22, 2025

LINER FREEDMAN TAITELMAN + COOLEY, LLP

/s/ Amir Kaltgrad
Bryan J. Freedman
Ellyn S. Garofalo
Amir Kaltgrad
1801 Century Park West, 5th Floor
Los Angeles, CA 90067

(310) 201-0005
bfreedman@lftcllp.com
egarofalo@lftcllp.com
aklatgrad@lftcllp.com

*Attorneys for Respondent*
*Sourced Intelligence, LLC*

JOINT STIPULATION IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
PURSUANT TO FED. R. CIV. P. 45